UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISIONS

M. K.,

    Plaintiff,

v.

GOOGLE LLC, et al.,

    Defendants.

Case No. 21-cv-08465-VKD

**ORDER GRANTING FREMONT UNIFIED SCHOOL DISTRICT'S MOTION TO DISMISS**

Re: Dkt. No. 69

Plaintiff M.K., through his mother as guardian ad litem, brings this action against Google, LLC ("Google") and the Fremont Unified School District ("District") asserting claims for relief for harm M.K. alleges he suffered when the District used a Google platform to facilitate remote learning during the COVID-19 pandemic. Both defendants moved to dismiss M.K.'s original complaint pursuant to Rule 12(b)(6). Dkt. Nos. 21, 33. The Court granted these motions, but gave M.K. leave to amend his complaint. Dkt. Nos. 64, 65.

M.K.'s first amended complaint ("FAC") asserts a single claim for "failure to protect" against the District, as well as several claims against Google.[1] Dkt. No. 66 ¶¶ 105-110. The District moved to dismiss this claim pursuant to Rule 12(b)(6); M.K. opposed the motion. Dkt. Nos. 69, 72.[2] The Court requested supplemental briefing from M.K. and the District regarding whether M.K.'s claim against the District is barred by sovereign immunity under the Eleventh Amendment. Dkt. No. 77. The District says it is; M.K. says it is not. Dkt. Nos. 81, 84.

---

[1] The Court will address Google's motion to dismiss in a separate order.

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 6, 19, 32.

The Court held a hearing on the District's motion to dismiss on July 18, 2023. Dkt. No. 86. Upon consideration of the moving and responding papers, as well as the oral arguments presented, the Court finds that M.K.'s claim against the District is barred by the Eleventh Amendment.

## I. BACKGROUND

The following facts are based on the allegations of the FAC.

In 2020, M.K. was a student at a public elementary school in the District. Dkt. No. 66 ¶ 1. In March 2020, due to the COVID-19 pandemic, the District closed its school buildings and M.K. began attending school remotely using a Google platform.[3] *Id.* ¶¶ 1-2. According to the FAC, "M.K's parents were not given an option to opt out or an alternative to receive education if they did not wish to submit M.K. to the risks of attending school on the Google platform." *Id.* ¶ 2.

The District assigned M.K. a Google account. *Id.* ¶ 3. Using this account, M.K. and other students "were allowed to access online videos provided by Google's YouTube, a video sharing platform[,] as well as Google [Slide Show], a platform that allows individuals to watch videos as well as insert videos and messages into slideshows to watch." *Id.* ¶ 7. The District logged M.K. out of his Google account at the end of each school day. *Id.* ¶ 3.

According to the FAC, M.K. used multiple devices to access his Google account, including his personal iPad and, later, a Google Chromebook computer supplied by the District. *Id.* ¶¶ 4, 6. M.K. watched videos on Google's YouTube and Slide Show platforms while logged into the Google platform for school. *Id.* ¶ 9. M.K.'s teachers informed his parents that M.K. was watching videos during class when he should have been focused on his lessons. *Id.* ¶ 10. M.K.'s teachers further advised M.K.'s parents that the teachers could see M.K.'s online activity during class time. *Id.* Based on this information, M.K. alleges that Google gave the District and other unidentified third parties access to M.K.'s online activity. *Id.* ¶ 13.

---

[3] In some places, the FAC refers to this platform as "Google Classroom" or "Google Classrooms." *See* Dkt. No. 66 ¶¶ 4, 14. However, it is not clear from the allegations in the FAC exactly what the platform is or whether there are any terms of service that govern the relationship between Google, the District, and M.K. with respect to the District's use of the Google platform to facilitate students' remote access to school.

2

On or about January 14, 2021, one of M.K's teachers reported receiving a sexually explicit communication from M.K. via a Google chat message. *Id.* ¶ 16. M.K. alleges that his Google account had been hacked and that he did not send the message. *Id.* ¶¶ 17, 20, 24.

According to the FAC, on or about January 27, 2021, M.K.'s teacher "scheduled a parent-teacher zoom call and made a teacher suspension on the basis of 'Sexual Harassment via Google Classroom.'" *Id.* ¶ 22. The FAC describes the suspension variously as a "teacher removal from class," a two-day suspension from school, an exclusion from "his regular school day" that lasted "weeks," and a "permanent[]" removal from class. *Id.* ¶¶ 23, 25-26, 28, 82, 107. M.K. eventually stopped attending school in the District. *Id.* ¶¶ 31, 82.

M.K. alleges that his parents "had to reduce their work to instruct [him], suffering a loss of income" and had to hire a tutor to work with him at their own expense. *Id.* ¶¶ 15, 33. He also alleges that he suffered emotional distress and embarrassment. *Id.* ¶¶ 25, 28, 30, 33.

M.K.'s sole claim against the District is for an alleged "failure to protect." Dkt. No. 66 ¶¶ 105-110. Specifically, he says that he was harmed when the District suspended him in violation of California Education Code § 48900.5 because the suspension was made by his teacher instead of a principal or superintendent, as the Code requires. *Id.* ¶¶ 107-108. As remedies for his claim against the District, M.K. seeks a declaration that the District must offer him an alternative education that does not require him to "submit to Google's platforms" and "[d]amages for emotional distress and damage to reputation caused by negligence of Defendants." *Id.* at 16-17.

## II. DISCUSSION

In its motion to dismiss, the District argues that: (1) the FAC includes asserts a new claim that exceeds the scope of permissible amendment; (2) M.K. fails to plead facts sufficient to state a failure to protect claim based on a violation of California Education Code § 48900.5; (3) any suspension was a disciplinary decision for which the District enjoys discretionary immunity under California Government Code § 820.2; and (4) M.K. did not plead compliance with the Government Tort Claims Act. *See* Dkt. No. 69.[4] M.K. responds that: (1) his failure to protect

---

[4] In its reply, the District also argued that, to the extent M.K. asserts a violation of California Education Code § 48900.5 as the basis for his claim, such a claim cannot be maintained as a

3

claim is not new, even though he did not previously assert a violation of California Education Code § 48900.5; (2) compliance with § 48900.5 is mandatory, not discretionary; (3) the District's internal policies regarding student discipline conflict with and are preempted by state law; and (4) he pleaded compliance with the Government Tort Claims Act in his original complaint and those allegations support his FAC. *See* Dkt. No. 72.

The Court does not decide whether M.K. states a claim for "failure to protect" against the District based on a purported violation of California Education Code § 48900.5 because M.K.'s sole claim against the District is barred by sovereign immunity under the Eleventh Amendment.

### A.   Eleventh Amendment Immunity

Claims against a state entity for violations of state law may be barred by the Eleventh Amendment and therefore outside the jurisdiction of the federal courts. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984). "[T]he principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Art. III." *Id.* at 98; *see also id.* at 119. "A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." *Id.* at 121; *Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc.*, 810 F.2d 869, 873 at n.2 (9th Cir. 1987) ("The effect of the Eleventh Amendment must be considered *sua sponte* by federal courts."). The plaintiff bears the burden of establishing a federal court's jurisdiction. *Stock W., Inc. v. Confederated Tribes of the Colville Rsrv.*, 873 F.2d 1221, 1225 (9th Cir. 1989).

Because California's school districts are "controlled and funded by the state government rather than the local district," the Ninth Circuit has held that they are "arms of the state" under the Eleventh Amendment and are therefore entitled to sovereign immunity. *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 251 (9th Cir. 1992); *see also Sato v. Orange County Dep't of Educ.*, 861 F.3d 923, 926, 934 (9th Cir. 2017) (reaffirming *Belanger* following enactment of AB 97). M.K. argues, however, that the District is not entitled to sovereign immunity because "M.K.

---

matter of law. Dkt. No. 75 at 2; *see Tirpak v. Los Angeles Unified Sch. Dist.*, 187 Cal. App. 3d 639, 646-47 (1986); *Henderson v. Newport-Mesa Unified Sch. Dist.*, 214 Cal. App. 4th 478, 498 (2013). M.K. was unable to distinguish these cases during oral argument. Dkt. No. 88 at 8:16-9:24.

seeks declaratory relief only" and "does not seek damages" against the District. Dkt. No. 81 at 2.

M.K.'s arguments are unavailing for three reasons. First, M.K. *does* seek damages against the District. The FAC includes a request for damages for emotional distress and damage to reputation cause by the District's (and Google's) alleged negligence. Dkt. No. 66 at 17. During the hearing, M.K. indicated that he withdrew his demand for damages against the District. Dkt. No. 88 at 6:19-22.

Second, it is unclear how M.K. could possibly obtain prospective injunctive relief for the District's alleged violation of California Education Code § 48900.5. He was suspended in 2021, and his parents withdrew him from school in the District before the conclusion of the 2020-2021 academic year. He does not allege that the District continues to require students to attend school remotely through the Google platform the District used during the pandemic, and he does not explain how his suspension in 2021 could be remedied by any injunction directed at the District's continued use of Google's platform or Google Chromebook computers.

Third, even if M.K. could plausibly seek declaratory or injunctive relief against the District, the District would still enjoy immunity. *Pennhurst*, 465 U.S. at 100 ("This jurisdictional bar applies regardless of the nature of the relief sought."). Because M.K. asserts only a single state law claim against the District, he may not invoke the exception to sovereign immunity that permits a plaintiff to seek prospective injunctive relief against a state to redress an ongoing violation of *federal* law. *See id.* at 105 (discussing availability of relief under *Ex Parte Young*, 209 U.S. 123, 159-60 (1908)); *see also id.* at 106 ("A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.").

### B. Leave to Amend

M.K. seeks leave to amend his pleading to substitute the superintendent of the Fremont Unified School District in place of the District on the theory that, under the Ninth Circuit's decision in *Southern Pacific Transportation Co. v. City of Los* Angeles, 922 F.2d 498 (9th Cir.

1990), an action for prospective injunction relief may be brought against a state official, even if an action against the state itself is barred by sovereign immunity. *See* Dkt. No. 81 at 2. M.K. is mistaken. *Southern Pacific Transportation* involved claims against a state agency for violations of *federal constitutional rights* under 42 U.S.C. § 1983, not violations of state law. *See* 922 F.2d at 501-502. In that case, the Ninth Circuit observed that California had not consented to be sued under § 1983 and Congress did not override states' sovereign immunity when it enacted that statute. *Id.* at 508 n.12. Here, any amendment M.K. might make to name a state official would be futile as his sole claim is for a purported violation of state law. *See Doe v. Regents of the Univ. of California*, 891 F.3d 1147, 1154 n. 6 (9th Cir. 2018) ("We have permitted plaintiffs leave to amend to conform their pleading with *Young*, . . . but our conclusion that the § 1094.5 petition is a state law claim bars Doe from bringing the writ petition in federal court against either The Regents or Perkin and means such an amendment would be futile.").

As there is no suggestion that the District has consented to federal jurisdiction in this action, the District is immune from M.K.'s state law claim in federal court.[5]

### III.  CONCLUSION

For the reasons explained above, the Court dismisses M.K.'s state law "failure to protect" claim against the District because that claim is barred by sovereign immunity. Because the Eleventh Amendment is a limit on federal courts' jurisdiction, the dismissal is without prejudice with respect to M.K.'s ability to assert his state law claim in a competent state forum. *Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846, 847 (9th Cir. 1999); *see also Zelda B. v. City of Oakland*, No. 21-CV-07078-DMR, 2022 WL 526160, at *3 (N.D. Cal. Feb. 22, 2022).

**IT IS SO ORDERED.**

Dated: July 19, 2023

VIRGINIA K. DEMARCHI
United States Magistrate Judge

---

[5] Eleventh Amendment immunity, where applicable, also bars claims brought pursuant to 28 U.S.C. § 1367(a). *Raygor v. Regents of Univ. of Minnesota*, 534 U.S. 533, 541-42 (2002).